Slip Op. 12 -36

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>        and<br><br>HILLTOP INTERNATIONAL, and OCEAN DUKE CORPORATION,<br><br>    Defendant-Intervenors. | Before: Donald C. Pogue,<br>        Chief Judge<br><br>Court No. 10-00275 |

<u>OPINION</u>

[Affirming Department of Commerce's remand redetermination]

Dated: March 20, 2012

    <u>Jordan C. Kahn</u>, <u>Andrew W. Kentz</u>, <u>Nathaniel J. Maandiq Rickard</u>, and <u>Kevin M. O'Connor</u>, Picard Kentz & Rowe LLP, of Washington, DC, for Plaintiff Ad Hoc Shrimp Trade Action Committee.

    <u>Joshua E. Kurland</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With him on the briefs were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the briefs was <u>Shana Hofstetter</u>, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

    <u>Mark E. Pardo</u>, <u>Andrew T. Schutz</u>, <u>Brandon M. Petelin</u>, and <u>Jeffrey O. Frank</u>, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for the Defendant-Intervenors Hilltop International and Ocean Duke Corporation.

**Pogue, Chief Judge:**  This case returns to the court

following remand by <u>Ad Hoc Shrimp Trade Action Comm. v. United</u>

<u>States</u>, __ CIT __, 791 F. Supp. 2d 1327 (2011) ("<u>Ad Hoc I</u>").  In

<u>Ad Hoc I</u>, the court reviewed the final results of the fourth

administrative review of the antidumping duty order covering

certain frozen warmwater shrimp from the People's Republic of

China ("China")[1] and ordered the Department of Commerce ("the

Department" or "Commerce") to further explain or reconsider its

decision to rely exclusively on Customs and Border Protection

Form 7501 data for entries designated as Type 03[2] ("Type 03 CBP

Data") when selecting mandatory respondents in the review. <u>Id.</u> at

1334.  In its <u>Final Results of Redetermination Pursuant to Court</u>

<u>Remand</u>, ECF No. 50 ("<u>Remand Results</u>"), Commerce found that Type

03 CBP Data remains the best available information and reaffirmed

its original determination. <u>Remand Results</u> at 28.  Plaintiff

continues to dispute this result.

---

[1] <u>Certain Frozen Warmwater Shrimp from the People's Republic of China</u>, 75 Fed. Reg. 49,460 (Dep't Commerce Aug. 13, 2010) (final results and partial rescission of antidumping duty administrative review) ("<u>Final Results</u>"), and accompanying Issues & Decision Memorandum, A-570-893, ARP 08-09 (Aug. 9, 2010), Original Admin. R. Pub. Doc. 180 (adopted in <u>Final Results</u>, 75 Fed. Reg. at 49,460) ("<u>I & D Mem.</u>").

[2] "Type 03" entries are consumption entries designated upon importation to be subject to an antidumping/countervailing duty. <u>See</u>  U.S. Customs and Border Protection, Dep't of Homeland Security, <u>CBP Form 7501 Instructions</u> 1 (Mar. 17, 2011), <u>available at</u> http://forms.cbp.gov/pdf/7501_instructions.pdf (last visited Mar. 13, 2012) ("<u>Form 7501 Instructions</u>").

For the reasons that follow, the court affirms Commerce's decision to rely exclusively on Type 03 CBP Data as compliant with the remand order and supported by a reasonable reading of the record evidence.

The court has jurisdiction pursuant to § 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a (2006)[3] and 28 U.S.C. § 1581(c) (2006).

## BACKGROUND

The facts necessary to the disposition of Plaintiff's request for review of the Remand Results are the following:[4]

In the administrative review at issue, Commerce relied exclusively on Type 03 CBP Data to determine the largest exporters by volume when choosing mandatory respondents. Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1332; see also 19 U.S.C. § 1677f-1(c)(2)(B) (permitting Commerce to limit individual review of respondents to the largest exporters by volume under certain circumstances). Ad Hoc Shrimp Trade Action Committee ("AHSTAC") challenged that decision before the Department, arguing that the Type 03 CBP Data was unreliable and did not accurately reflect the actual volume of subject imports;

---

[3] All subsequent citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[4] Familiarity with the court's prior decision is presumed.

therefore, Type 03 CBP Data did not form a reasonable data set

for respondent selection.  Ad Hoc I, __ CIT at __, 791 F. Supp. 2d

at 1330-31.  In support of its position, AHSTAC placed on the

record:  (1) the final results of the third administrative review

of this antidumping duty order, detailing discrepancies between

the Type 03 CBP Data and verified import data for respondent

Zhanjiang Regal Integrated Marine Resources Co., Ltd. ("Regal AR3

Verification");[5] (2) alternative import data sets — U.S. Census

Import Data ("IM-145 Data")[6] and Automated Manifest Data ("AMS

Data")[7] — showing import volume discrepancies when compared with

Type 03 CBP Data; and (3) two reports to Congress — a United

States Customs and Border Protection report ("CBP Report")[8] and a

---

[5] Certain Frozen Warmwater Shrimp from the People's Republic
of China, 74 Fed. Reg. 46,565 (Dep't Commerce Sept. 10, 2009)
(final results and partial rescission of antidumping duty
administrative review) ("AR3 Final Results"), and accompanying
Issues & Decision Memorandum, A-570-893, ARP 07-08, Cmt. 7 at
23-24 (Aug. 28, 2009) (adopted in AR3 Final Results, 74 Fed. Reg.
at 46,566) ("AR3 I & D Mem.").

[6] A summary of the IM-145 Data was provided by AHSTAC in its
comments on respondent selection. Comments on Resp't Selection,
A-570-893, ARP 08-09 (Apr. 9, 2009), Original Admin. R. Con. Doc.
3 [Pub. Doc. 18], Ex. 3 ("AHSTAC's Apr. 9, 2009 Comments").

[7] A summary of the AMS Data was provided in the comments on
respondent selection submitted by the American Shrimp Processor's
Association ("ASPA") and the Louisiana Shrimp Association
("LSA"). Comments on Resp't Selection, A-570-893, ARP 08-09 (Apr.
10, 2009), Original Admin. R. Con. Doc. 2 [Pub. Doc. 20], Ex. 2
("ASPA's & LSA's Apr. 10, 2009 Comments).

[8] U.S. Customs and Border Protection, Report to Congress on
(1) U.S. Customs and Border Protection's Plans to Increase AD/CVD
Collections and (2) AD/CVD Enforcement Actions and Compliance

U.S. Government Accountability Office Report ("GAO Report")[9] —

discussing investigations into misclassification and

transshipment of Chinese shrimp imports to the United States.

Commerce refused to consider AHSTAC's evidence and relied

exclusively on Type 03 CBP Data in the Final Results. Ad Hoc I,

__ CIT at __, 791 F. Supp. 2d at 1331–32.

     AHSTAC subsequently challenged Commerce's determination

before this court.  Ruling on that challenge, Ad Hoc I held —

with specific reference to the Regal AR3 Verification — that

"[b]ecause Commerce failed to take into account record evidence

that fairly detracts from the weight of the evidence supporting

its POR subject entry volume determinations, these determinations

are not supported by substantial evidence." Id. at 1334.  The

court remanded the Final Results to Commerce to "take into

account the record evidence of significant entry volume

inaccuracies in Type 03 CBP Form 7501 data . . . and explain why

it is nevertheless reasonable to conclude that the Type 03 CBP

Form 7501 data used in this case are not similarly inaccurate,

and/or otherwise reconsider its determination." Id.

_____

Initiatives, reprinted in AHSTAC's Apr. 9, 2009 Comments, Ex. 1.

     [9] U.S. Gov't Accountability Office, Seafood Fraud: FDA
Program Changes and Better Collaboration Among Key Federal
Agencies Could Improve Detection and Prevention (2009), reprinted
in AHSTAC's Apr. 9, 2009 Comments, Ex. 2.

## STANDARD OF REVIEW

"The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." Jinan Yipin Corp. v. United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C. § 1516a(b)(1)(B)(1)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938), "tak[ing] into account whatever in the record fairly detracts from its weight," Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).  In brief, the substantial evidence standard asks whether, based on the record evidence as a whole, the agency's action was reasonable. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

## DISCUSSION

In Ad Hoc I, Commerce failed to take into account the record evidence as a whole. Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1333-34.  In particular, Commerce failed to consider evidence on the record that detracted from the reliability of the Type 03 CBP Data. Id. at 1334.  By not considering this evidence, Commerce failed to meet the basic requirements of the substantial evidence

test, see Universal Camera, 340 U.S. at 488, so the court

remanded the determination to Commerce to:

> take into account the record evidence of significant
> entry volume inaccuracies in Type 03 CBP Form 7501 data
> for merchandise subject to this antidumping duty order,
> and explain why it is nevertheless reasonable to
> conclude that the Type 03 CBP Form 7501 data used in
> this case are not similarly inaccurate, and/or
> otherwise reconsider its determination,

Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1334.

In the Remand Results, Commerce considered the evidence of

inaccuracies that AHSTAC submitted and concluded that "the Type

03 data [relied upon in this review] is reliable and not

similarly inaccurate, and remains the best available on which to

base respondent selection." Remand Results at 4.  Thus, Commerce

has considered the evidence of inaccuracy, as required by the

remand order, and the court must now decide whether the

Department's decision to continue relying upon Type 03 CBP Data

is reasonable. See Nippon Steel, 438 F.3d at 1351.

In making such a determination the court does not substitute

its judgment for that of the agency.  As the Court of Appeals for

the Federal Circuit has stated:

> Although a reviewing court must take into account
> contradictory evidence or any evidence in the record that
> undermines the agency's finding, the substantial evidence
> test does not require that there be an absence of evidence
> detracting from the agency's conclusion, nor is there an
> absence of substantial evidence simply because the reviewing
> court would have reached a different conclusion based on the
> same record.

Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007)

(citing <u>Universal Camera</u>, 340 U.S. at 487–88).

The court will examine whether Commerce's decision is supported by substantial evidence, first, in light of the conflicting evidence AHSTAC presents and, second, in light of the alternative data sets AHSTAC seeks. In the third part of the opinion, the court will address AHSTAC's challenge to Commerce's policy of reviewing only respondents that have suspended entries.

I.   <u>The Evidence of Inaccuracies in Type 03 CBP Data Is<br>Insufficient to Render Commerce's Determination Unreasonable</u>

AHSTAC has consistently challenged the Department's use of Type 03 CBP Data in this review by presenting three categories of evidence demonstrating what AHSTAC believes to be the unreliability of the Type 03 CBP Data: (1) the Regal AR3 Verification; (2) the IM-145 and AMS Data; and (3) the CBP and GAO Reports to Congress.  AHSTAC now challenges the <u>Remand Results</u> on these same grounds, arguing that the Department's redetermination is unreasonable in light of the evidence on the record that the Type 03 CBP Data is unreliable.  The court will treat each category of evidence in turn.

A.   *The Regal AR3 Verification is Unpersuasive in Light of<br>the Fourth Administrative Review Verification*

The first category of evidence AHSTAC submits is a finding from the third administrative review detailing inaccuracies in the Type 03 CBP Data.  In particular, when Commerce verified respondent Regal's data in the third administrative review, the

Department found significant discrepancies in import volumes of

subject merchandise compared with those reported on Form 7501.

AR3 I & D Mem. Cmt. 7 at 23.  The court in Ad Hoc I gave

particular attention to this fact when ordering the remand:

> The fact that, in the immediately preceding review,
> Commerce discovered significant inaccuracies,[10]
> undetected by Customs, in the CBP entry volume data for
> subject merchandise from the very same respondents as
> those covered in this review casts sufficient doubt on
> the presumption that Customs has assured the accuracy
> of such data for this POR.

Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1333.

Following verification in the fourth administrative review,

however, Commerce found no such discrepancy.  As the Department

states in the Remand Results, "the record for AR4 shows that

Regal's reported volume of subject exports, while not identical,

is reasonably consistent with the volume provided in CBP Type 03

data." Remand Results at 14.  While the results of the third

administrative review did "cast doubt" on the accuracy of the

Type 03 CBP Data used in the fourth administrative review, such

doubt was subsequently resolved by the verified results of the

fourth administrative review.  Thus, the court finds reasonable

Commerce's statement that,

> as Regal was fully reviewed in this fourth
> administrative review period, and the Department did
> not find any evidence that Regal misreported or
> underreported any sales of subject merchandise, we find

---

[10] As Commerce notes in the Remand Results, the inaccuracies
were limited to a single respondent, Regal. Remand Results at 13.

      that Petitioner's speculative argument regarding
      Regal's purported continuation of misreporting of sales
      is unfounded, based on the record evidence of this
      review period.

<u>Remand Results</u> at 25.

    AHSTAC argues that the discrepancy discovered in the third administrative review represents widespread misclassification by importers. Pl. Ad Hoc Shrimp Trade Action Comm.'s Comments on <u>Final Results of Redetermination Pursuant to Court Remand</u> at 25–26, ECF No. 54 ("Pl.'s Comments").   AHSTAC's argument is premised on the bifurcation of responsibility between the respondent exporter/producer, whose records are verified in the administrative review, and the importer, who is responsible for completing Form 7501.  According to AHSTAC's theory, the discrepancy discovered in the third administrative review means that importers should be presumed to be misclassifying imports until "record evidence demonstrates otherwise," <u>Id.</u> at 25. AHSTAC further argues that, as Regal is not an importer, evidence that misclassification has been corrected vis-a-vis Regal's merchandise does not prove that importers, generally, are not continuing to misclassify.

    This argument is inconsistent with the record evidence in the current review.  The record shows that in the third administrative review, the Type 03 CBP Data for Regal was inaccurate; however, in the fourth administrative review that inaccuracy was not present.  Though it is true that the

"determination of data inaccuracies in a separate review of the same producer/exporter, subject to the same antidumping duty order, casts doubt on similar data regarding such producer/exporter in an adjacent review," Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1333 (construing Home Products Int'l, Inc. v. United States, 633 F.3d 1369, 1380–81 (Fed. Cir. 2011)), evidence from the latter review showing that the inaccuracy no longer exists resolves such doubt.  Thus, evidence that an importer inaccurately completed Form 7501 in a prior review *but did not perpetuate similar inaccuracies in the review at issue* is insufficient to impugn the behavior of importers generally or the reliability of the data.  The CBP data is presumed to be collected according to standards of regularity and, unless that presumption is rebutted, such data may be considered reliable. Pakfood Public Co. v. United States, __ CIT __, 753 F. Supp. 2d 1334, 1345–46 (2011).  In light of the accuracy of the Type 03 CBP Data for Regal in the fourth administrative review, the presumption stands for that review.

The Regal AR3 Verification was singled out in Ad Hoc I as relevant and persuasive because it pointed to specific and determinable evidence of unreliability in the Type 03 CBP Data. Given the lack of inaccuracy in the fourth administrative review, the prior inaccuracy is no longer persuasive.  Therefore, the court turns to the more generalized evidence of inaccuracy put

forward by AHSTAC.  Though it was not directly addressed in Ad
Hoc I, the court will turn first to the IM-145 and AMS Data.

> B.    *Inconsistency Between the IM-145/AMS Data and Type 03
>       CBP Data Is Not an Indication of Unreliability*

AHSTAC argues that discrepancies between import volumes
listed in the Type 03 CBP Data and the IM-145/AMS Data indicate
that misclassification by importers has rendered the Type 03 CBP
Data inaccurate.  According to AHSTAC, because import volumes
listed in the IM-145 Data are larger than in the Type 03 CBP
Data, importers must be misclassifying imports on Form 7501 as
non-subject merchandise. Pl.'s Comments at 31.  AHSTAC further
argues that the AMS data shows a growth in imports from
Zhangjiang Guolian Aquatic Products Co., Ltd. ("Guolian"), which
is not subject to the antidumping duty order, and that this
indicates a likelihood that importers are misclassifying imports
from producers/exporters subject to the antidumping duty order as
imports from Guolian. Id. at 31-32.

Commerce responds to AHSTAC by arguing that the IM-145 Data
is not limited to subject imports; therefore, discrepancies
between IM-145 Data and Type 03 CBP Data may result from the
overinclusivness of the IM-145 Data rather than from
misclassification. Def.'s Response to Pl.'s Remand Comments at
8-9, ECF No. 60 ("Def.'s Reply").  This analysis is reasonable.
Because the IM-145 data is based on Harmonized Tariff Schedule of
the United States("HTSUS") categories covering a broader range of

merchandise than that subject to the antidumping duty order, it
is not only unsurprising but expected that the IM-145 Data would
show a positive volume discrepancy when compared to the Type 03
CBP Data.  Therefore, such discrepancy does not impugn the
reliability of the Type 03 CBP Data.[11]

     For similar reasons, Commerce's decision not to rely upon
the discrepancy between the AMS Data and the Type 03 CBP Data is
also reasonable.  According to AHSTAC, the growth in imports from
Guolian, which is not subject to the order, suggests that
importers are misclassifying merchandise from exporters/producers
subject to the order as merchandise from Guolian to avoid duties.
Such an explanation is plausible.  However, Commerce puts forward
an equally plausible explanation that "an excluded company like
Zhangjiang Guolian logically would be competitive *vis-a-vis* other
exporters subject to the order because its merchandise would
naturally not be subject to antidumping duty cash deposit
collection, suspension, or liquidation." Def.'s Reply at 9-10;
see also Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620

---

     [11] AHSTAC suggests that Commerce could "assess the extent to
which these data are over-inclusive and rely on such analysis to
support its decision-making." Pl.'s Comments at 31.  However,
because the discrepancy between the IM-145 Data and the Type 03
CBP Data does not impugn the Type 03 CBP Data's reliability,
there is no reason to burden Commerce with such analysis.
Furthermore, Commerce notes that, "[d]espite Ad Hoc's claim,
Commerce has no way of getting behind the data and excluding non-
subject merchandise." Def.'s Reply at 9.  Nor does AHSTAC provide
any suggested methodology.

(1966) ("[T]he possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.").

   C.   *The Reports to Congress Alone Are Insufficient to*
        *Challenge the Presumption of Reliability*

     Finally, AHSTAC argues that two reports to Congress, the CBP

Report and the GAO Report, show ongoing problems of

misclassification and transshipment, which suggests that the

Chinese shrimp industry is "structured such that there is a

likelihood of entry misclassification." Pl.'s Comments at 22.

     Though these reports show that both misclassification and

transshipment of Chinese shrimp exported to the U.S. has occurred

in the past, they do not indicate current inaccuracies in the

Type 03 CBP Data used for the fourth administrative review; nor

do they indicate ongoing problems.  First, the reports predate

the administrative review at issue here.[12]  Second, the reports

do not indicate misclassification or transshipment specifically

relevant to the determination of mandatory respondents in the

fourth administrative review.  Finally, issues noted in the

reports were subsequently addressed through enforcement actions.

While no one of these facts is necessarily fatal to Plaintiff's

---

[12] While it is understandable that there is a lag time
between when conduct occurs and when the report detailing the
investigation of that conduct becomes public, see Pl.'s Comments
at 22, this fact does not render the reports an account of the
contemporary situation.

argument, combined they significantly diminish the weight to be
given the reports as evidence of irregularity in the fourth
administrative review.

        In light of these facts, it is simply not true that "[t]hese
government reports vanquished the presumption of regularity
ordinarily afforded to Type 03 CBP data and required Commerce to
support its respondent selection with substantial evidence." <u>Id.</u>
at 24 (citing <u>Ad Hoc I</u>, __ CIT at __, 791 F. Supp. 2d at 1331–34,
1337).  Rather, in <u>Ad Hoc I</u>, the court found that in light of all
the evidence put forward by AHSTAC, but particularly in light of
the Regal AR3 Verification evidence, the presumptive reliability
of the Type 03 CBP Data was "call[ed] into question." <u>Ad Hoc I</u>,
__ CIT at __, 791 F. Supp. 2d at 1332–33.  Because the Regal AR3
Verification is no longer persuasive and the IM-145/AMS Data is
likewise unpersuasive, the CBP and GAO Reports must stand on
their own.  However, given the limitations on the applicability
of the CBP and GAO Reports noted above, these reports are
insufficient to impugn the presumption of regularity. <u>See</u> <u>Seneca</u>
<u>Grape Juice Corp. v. United States</u>, 71 Cust. Ct. 131, 142, C.D.
4486, 367 F. Supp. 1396, 1404 (1973) ("In the absence of clear
evidence to the contrary, the courts presume that public officers
have properly discharged their duties . . . .").

        Having determined that Commerce's reliance on the Type 03
CBP Data is supported by a reasonable reading of record evidence,

the court now turns to whether Commerce's choice among

alternative data sets was also reasonable.

II.  The Court Defers to Commerce's Reasonable Choice Among
     Alternative Data Sets

     In addition to its arguments challenging the reliability of

the Type 03 CBP Data, discussed above, AHSTAC also contends that

Commerce should either release Type 01 CBP data[13] to corroborate

the Type 03 CBP Data or employ Quantity and Value Questionnaires

("Q&V Questionnaires") because Q&V Questionnaires provide a more

complete, thorough, and accurate accounting of import volumes.

     Where, as here, Commerce's decision is supported by a

reasonable reading of record evidence, see supra Part I, the

court will not upset Commerce's reasonable choice among

alternative data sets, even if they may be available. Cf. Peer

Bearing Co.-Changshan v. United States, 27 CIT 1763, 1770, 298 F.

Supp. 2d 1328, 1336 (2003) ("The Court's role in this case is not

to evaluate whether the information Commerce used was the best

available, but rather whether Commerce's choice of information is

reasonable."); see also Nucor v. United States, __ CIT __, 594 F.

Supp. 2d 1320, 1356 (2008) ("It is well-established that it is an

agency's domain to weigh the evidence; therefore this Court must

not upset the [agency's] reasonable conclusions supported by

---

     [13] Type 01 CBP data includes consumption entries designated
upon importation as free and dutiable on Form 7501. See Form 7501
Instructions, supra, at 1.

substantial evidence . . . .").

Furthermore, the court finds unpersuasive AHSTAC's arguments for the necessity and/or advantage of the alternative data sets. With regard to Type 01 CBP data, the court is not convinced that the release of such data is required. Though the court noted in Ad Hoc I, that "one way to corroborate the accuracy of CBP Type 03 entry volume data without undue administrative burden is to compare such data with CBP Type 01 entry volume data . . . ," Ad Hoc I, __ CIT at __, 791 F. Supp. 2d at 1334 n.19, this statement was a suggestion, not a mandate, to Commerce. The court is now convinced by Commerce's argument in the Remand Results that "[t]he classification itself does not yield any specific information that would assist the Department in expeditiously determining whether merchandise should have been reported as Type 03, or making any modifications to the Type 03 data for purposes of respondent selection." Remand Results at 15.[14]  This is particularly the case in light of the fact that Plaintiff offered no further suggestions on how Type 01 data would be used in its

---

[14] Commerce goes on to explain that

> [t]ype 01 and Type 03 data are, by definition, mutually exclusive. Type 01 data are comprised of entries classified as non-subject merchandise; Type 03 data are comprised of entries classified as subject merchandise. The Department does not know, and Petitioners do not suggest, a way that the two datasets could be used to verify or corroborate each other.

Remand Results at 23.

Comments.

Regarding Q&V Questionnaires, the court finds unpersuasive the Department's argument that Q&V Questionnaires would not provide more accurate data. In support of its position, Commerce contends that "[i]f respondents and/or their importers participate in widespread misclassification schemes, they are unlikely to provide information in Q&V responses that are materially different from the data reported on CF-7501 as Type 03." Remand Results at 17.  Commerce fails to address AHSTAC's well argued point that Form 7501 is completed by importers, while Q&V Questionnaires are completed by exporters/producers with more direct knowledge of merchandise and the channels of shipment; any suggestion by Commerce that misclassification on Form 7501 is the product of collusion between importers and exporters is mere speculation.  Nor has Commerce addressed the fact that Q&V Questionnaires are simply more comprehensive and thorough for gathering relevant information than Form 7501.

Nonetheless, Commerce's decision not to use Q&V Questionnaires is a reasonable concession to administrative convenience.  Under these circumstances, Commerce has a valid concern regarding the relative burdens placed on the Department by Q&V Questionnaires versus Type 03 CBP Data,[15] and

---

[15] "Relying on Q&V responses requires significant resources, and time, to send and track the delivery of Q&V questionnaires and responses, to issue follow-up questionnaires when

"[a]dministrative convenience of the government constitutes a reasonable and rational basis for agency action." <u>Pakfood</u>, __ CIT at __, 753 F. Supp. 2d at 1343.

For these reasons, Commerce's decision to rely exclusively on Type 03 CBP Data rather than on other possible data sets is reasonable.  The court now turns to the final issue, i.e., whether Commerce must review respondents with no suspended entries.

III. <u>Whether Commerce May Limit Review to Only Respondents with Suspended Entries Is Not Ripe in this Case</u>

The court remanded this case to Commerce to address AHSTAC's challenges to the reliability of the Type 03 CBP Data; however, in the post-remand briefing, a second issue emerged: whether Commerce may limit review to respondents with suspended entries. The issue arises from Commerce's statement in the <u>Remand Results</u> that "[i]t is [the] Department's longstanding practice to not conduct reviews for companies that do not have <u>any</u> suspended entries because there are no entries for which the Department can issue assessment instructions." <u>Remand Results</u> at 5.

AHSTAC challenges Commerce's articulated policy on several grounds.  First, AHSTAC asserts that such a policy "delegates the determination of whether merchandise is covered by an AD order to

appropriate, and to aggregate and analyze the numerous responses. The review covers nearly 500 companies, most of which were requested by Petitioner." <u>Remand Results</u> at 17.

importers who alone decide whether to identify merchandise as

Type 03 on CF 7501." Pl.'s Comments at 10.  Next, AHSTAC asserts

that Commerce is putting forward a theory that "duties cannot be

recovered on unsuspended entries." Id.[16]  Finally, AHSTAC argues

that this theory is contrary to the statutory requirement that

"'if the United States has been deprived of duties,' CBP 'shall

require such lawful duties . . . be restored,'" Id. (quoting 19

U.S.C. § 1592(d)), and that it is not a longstanding agency

practice, Id. at 14–16.

Though both sides address considerable argument to these

concerns, the controversy is not ripe on the facts of this case.

As the Court of Appeals for the Federal Circuit has noted:

> The doctrine of ripeness is designed "to prevent the
> courts, through avoidance of premature adjudication,

---

[16] This argument is premised on Commerce's response to
AHSTAC's comments on the Draft Remand Results.  AHSTAC quotes
from the Remand Results, noting "AHSTAC alerted Commerce to this
problematic legal interpretation [in comments on the Draft Remand
Results], prompting the agency to respond as follows:

> The Department's statement was not an admission that
> importers control the scope of an administrative
> review.  The point, instead, was that the Department
> does not waste administrative resources by conducting a
> full review that will not result in the assessment of
> duties. . . . A policy whereby the Department would
> expend considerable resources to determine whether or
> not entries should have been suspended but were not,
> and to determine the amount of dumping entries for
> which assessment cannot be effectuated would be futile
> exercise.

Pl.'s Comments at 10 (quoting Remand Results at 19–20 (footnote
omitted)) (emphasis added in Pl.'s Comments).

> from entangling themselves in abstract disagreements
> over administrative policies, and also to protect the
> agencies from judicial interference until an
> administrative decision has been formalized and its
> effects felt in a concrete way by the challenging
> parties."

Eurodif S.A. v. United States, 506 F.3d 1051, 1054 (Fed. Cir.

2007) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49

(1967), rev'd on other grounds, United States v. Eurodif S.A.,

555 U.S. 305 (2009)).

AHSTAC's challenge to Commerce's policy statement is not

ripe because the record does not support the existence of a

controversy on this issue.  AHSTAC does not allege, nor has the

court discovered, specific facts to support the contention that

*any* respondent avoided review by misclassifying its entries as

not subject to suspension.[17]  More precisely for the purpose of

this case, AHSTAC has not alleged that any respondents were

excluded from the mandatory respondent selection process for

failing to have any suspended entries.[18]  Finally, AHSTAC dos not

allege, except in the most general terms, that any unsuspended

---

[17] The court notes that the review was rescinded as to
several companies upon receipt of no shipment certifications,
which Commerce determined were accurate. Final Results, 75 Fed.
Reg. at 49,460, 49,462.  If AHSTAC is challenging this practice,
it does not make such clear in its briefs.

[18] As AHSTAC notes in its Comments, whether Commerce will
review a respondent with no suspended entries is irrelevant to
the issue of whether Commerce's mandatory respondent selection
was supported by substantial evidence, and therefore not before
the court for adjudication. See Pl.'s Comments at 13–14.

entries have led to the non-recovery of duties owed.  Without

specific factual allegations of the practice AHSTAC challenges,

there is no actual controversy for the court to decide.

The lack of ripeness in this case is manifest in the

disconnect between the parties' briefs.  AHSTAC accuses Commerce

of delegating the determination of dutiable merchandise to

importers and arguing that duties are unrecoverable on

unsuspended entries. Pl.'s Comments at 10.  Commerce denies that

these are its policies and argues in return that AHSTAC is

seeking to use the review process as a forum for investigation

and enforcement of fraud and negligence — responsibilities

delegated to Customs not Commerce. Def.'s Reply at 15.  This is

just the sort of "abstract disagreement[] over administrative

polic[y]" that the courts should avoid. Eurodif, 506 F.3d at

1054.  Without an actual controversy, it is both difficult and

imprudent for the court to intervene — not only are the relevant

considerations obfuscated in the abstract, but the impact of the

court's action is unknowable.

Contrary to AHSTAC's assertion, the Remand Results do not

"hinge" on Commerce's practice regarding review of unsuspended

entries. Pl.'s Comments at 16–17.  Rather, the Remand Results

hinge on whether the Type 03 CBP Data is a reasonable basis for

determining the largest exporters by volume, pursuant to 19

U.S.C. § 1677f-1(c)(2)(B).  It is not necessary for the court to

Court No. 10-00275                                                        Page 23

address the former issue in order to render a decision on the

latter.[19]   Nor does the court consider it wise to intervene in

such an unripe dispute.  See Eurodif, 506 F.3d at 1054 ("[The

doctrine of ripeness] is drawn 'both from Article III limitations

on judicial power and from prudential reasons for refusing to

exercise jurisdiction, but, even in a case raising only

prudential concerns, the question of ripeness may be considered

on a court's own motion." (quoting Nat'l Park Hospitality Ass'n

v. Dep't of Interior, 538 U.S. 803, 808 (2003))).


                              **CONCLUSION**

        For all the foregoing reasons, the Department's Final

Results, 75 Fed. Reg. 49,460, as explained by the Remand Results,

will be affirmed.

        Judgment will be entered accordingly.

        It is **SO ORDERED.**


                                    ___/s/ Donald C. Pogue___
                                    Donald C. Pogue, Chief Judge

Dated: March 20, 2012
       New York, New York

---

        [19] Because the court finds that the use of Type 03 CBP Data
is supported by substantial evidence, it also does not reach
Commerce's argument that failure to enjoin all liquidations in
this review renders moot the possibility of redetermining the
mandatory respondents using data other than Type 03 CBP Data. See
Remand Results at 20-21.

Slip Op. 12 - 36

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│ AD HOC SHRIMP TRADE ACTION           │
│ COMMITTEE,                           │
│                                      │
│      Plaintiff,                      │
│                                      │
│            v.                        │
│                                      │
│ UNITED STATES,                       │
│                                      │
│      Defendant,                      │
│                                      │
│           and                        │
│                                      │
│ HILLTOP INTERNATIONAL, and           │
│ OCEAN DUKE CORPORATION,              │
│                                      │
│      Defendant-Intervenors.          │
│                                      │
└─────────────────────────────────────┘
```

Before: Donald C. Pogue,
         Chief Judge

Court No. 10-00275

<u>JUDGMENT</u>

The court having heard and decided this matter, now in accordance with that opinion, the Department of Commerce's <u>Final Results</u>, 75 Fed. Reg. 49,460, as further explained by the <u>Final Results of Redetermination Pursuant to Court Remand</u>, ECF No. 50, are affirmed.

                    /s/ Donald C. Pogue
                 Donald C. Pogue, Chief Judge

Dated: March 20, 2012
       New York, New York